# EXHIBIT A

**Melanie Derefinko**

| | |
|---|---|
| **From:** | David Scalia <dscalia@dugan-lawfirm.com> |
| **Sent:** | Sunday, May 16, 2021 1:16 PM |
| **To:** | Drake D. Foster |
| **Cc:** | James Dugan; drplymale@plymalelawfirm.com |
| **Subject:** | RE: DLF v KCC-CDC for the Parish of Orleans-21-4133 Div "M" Docket 13 |

Also Drake, please advise via return e-mail if you will waive formal service of the Citation and Petition.
Thanks,

David S. Scalia, Esq.
The Dugan Law Firm, APLC
365 Canal Street, Suite 1000
New Orleans, LA 70130
PH: (504)648-0180
FX: (504)648-0181

The information contained in this electronic message and any attachments thereto are attorney privileged and confidential information intended only for the use of the owner of the e-mail address listed as the recipient of this message.  If you are not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, dissemination, distribution, or copying of this communication or its attachments is strictly prohibited.  If you are not the intended recipient and have received this transmission in error, please immediately notify us by return e-mail.

**From:** David Scalia
**Sent:** Sunday, May 16, 2021 12:53 PM
**To:** Drake D. Foster <DFoster@kccllc.com>
**Cc:** James Dugan <jdugan@dugan-lawfirm.com>; drplymale@plymalelawfirm.com
**Subject:** DLF v KCC-CDC for the Parish of Orleans-21-4133 Div "M" Docket 13

Drake, please see attached a courtesy copy of the Petition filed in Civil District Court for the Parish of Orleans on 5/14/21.

Best,
David S. Scalia, Esq.
The Dugan Law Firm, APLC
365 Canal Street, Suite 1000
New Orleans, LA 70130
PH: (504)648-0180
FX: (504)648-0181

The information contained in this electronic message and any attachments thereto are attorney privileged and confidential information intended only for the use of the owner of the e-mail address listed as the recipient of this message.  If you are not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, dissemination, distribution, or copying of this

communication or its attachments is strictly prohibited.  If you are not the intended recipient and have received this transmission in error, please immediately notify us by return e-mail.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: 2021-4133          DIVISION: " "          DOCKET:

THE DUGAN LAW FIRM, A PROFESSIONAL LAW CORPORATION

VERSUS

KURTZMAN CARSON CONSULTANTS, LLC

FILED:_____          _____
                                          DEPUTY CLERK

## PETITION FOR DECLARATORY JUDGMENT

**NOW INTO COURT**, comes THE DUGAN LAW FIRM, A PROFESSIONAL LAW CORPORATION (hereafter "DLF"), by and through undersigned counsel, and for its Petition respectfully states:

### I.

### INTROUCTION

1.      DLF is a New Orleans based law firm operating primarily in the areas of nationwide mass tort and class action litigation since 2001.

2.      Mass tort litigation is by its nature complex and requires managing the files of hundreds if not thousands of individual claimants,  each with their own case, and each requiring their own proof of product identification and exposure, injury, and damages.  Unlike class actions, plaintiff attorneys in mass tort litigation represent hundreds or even thousands of clients mostly obtained by attorney marketing, all of whom then need to have their individual facts and circumstances of their cases  reviewed.  This inventory of cases then needs to be organized and stored in an accessible manner.

3.      Mass tort litigation continues to grow.  It can trace its history to the 1960s and early 1970s, when attorneys began representing plane crash victims.  In the seventies mass torts expanded with toxic exposure cases such as the Viet Nam era Agent Orange exposure litigation, and then Asbestos litigation.  Later, in the nineties, mass torts expanded further with tobacco litigation.  In the 2000s mass tort litigation grew further with consumer products, as well pharmaceutical and medical device litigation.  As these numbers grew, so did the number of

claimants pursuing claims, creating larger and larger inventories of cases to be managed and organized. Because large number of claims and the complexity of mass tort litigation, law firms engaged in the practice of mass tort litigation often engage the litigation support services of a third party a mass tort administrator.

4.      Kurtzman Carson Consultants, LLC (hereafter "KCC"), founded in 2001, has been in business providing Corporate Restructuring Services, Claims Administration and Noticing Services, High-volume Production and Distribution Services, Class Action Services, and Virtual Data Room (VDR) Services.[1]

5.      As the number of mass tort cases continued to grow, in or about the early 2010s KCC decided to expand its services to include Mast Tort administrative services. including but not limited to client intake and retention, client communication, medical record retrieval and review, plaintiff fact sheet (PFS) completion and filing, discovery assistance, settlement negotiation, lien resolution, and funds disbursement.

6.      KCC holds itself out as having expertise as a mass tort administrator that provides services to maximize the value of mass tort firms' leads, navigating them from intake through qualification, to medical records review, through discovery requirements, moving forward to settlement, lien resolution, and finally, distribution. KCC states that it brings expertise, value, and high-quality service to each case, carefully managing each by its team of experienced consultants with *decades of experience* and a *deep understanding of the distinctive needs associated with complex mass tort administration*[2].

## II.

## PARTIES

7.      The Dugan Law Firm, APLC is a Louisiana Professional Law Corporation, a citizen of the State of Louisiana, and domiciled in the Parish of Orleans with its principal place of business located at 365 Canal Street, One Canal Place, Suite 1000, New Orleans, Louisiana, 70130.

8.      KCC, LLC is a foreign limited liability company with principal offices in Los Angeles, California, and additional offices in Louisville, Kentucky, New York, New York, and

---

[1] See LinkedIn page: https://www.linkedin.com/company/kcc-llc/about/ (Last visited May 10, 2021)
[2] https://www.kccllc.com/our-services/mass-tort/what-we-do (last referenced January 25, 2001). (emphasis added)

San Rafael, California.  Upon information and belief KCC, LLC provides its services to firms throughout the United States including the State of Louisiana, and the Parish of Orleans.

## III,

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over all matters alleged herein.

10.     This Court has personal jurisdiction over Defendant pursuant to the Louisiana Long-arm Statute.

11.     KCC entered into an agreement with DLF in the State of Louisiana, Parish of Orleans.  KCC is providing services as a mass tort administrator to DLF whose business is located in the State of Louisiana and has derived substantial revenue from such business in Louisiana, and the basis of this suit arises out of such conduct.

12.     Venue is proper pursuant to Louisiana Code of Civil Procedure article 42(5) because KCC is a foreign limited liability company and the Parish of Orleans is the Parish of the plaintiff's domicile.

## IV.

## FACTS

13.     On June 19, 2015 DLF and KCC entered into a services agreement ("The Agreement") whereby KCC agreed to provide mass tort administration services to DLF, including intake and data management, retainer procurement, client data collection, document processing and review, preparation of Plaintiff Fact Sheets, lien resolution and related services, for prices and fees a set forth on a Fee Structure attachment to The Agreement.

14.     Between June 19, 2015 and the present, DLF and KCC have exchanged numerous emails and letters,  and have engaged in numerous conversations regarding the fees due in various of DLF's mass tort cases for which KCC is providing varying mass tort administration services, including those which include many claimants whose claims have a zero or negative value.

15.     As a result of these conversations and emails, DLF has paid KCC reduced amounts for said zero and negative value cases, and KCC has accepted those payments. However, KCC now seeks to collect fees not contemplated by The Agreement, the conversations, or the emails, in effect seeking fees not agreed to by DLF and/or not earned by KCC.

16.    Pursuant to the fee structure the maximum per claimant fee KCC charges is $3,250, of which $500 is considered a case retention fee which KCC is required to bill to DLF within thirty (30) days of KCC obtaining a retainer signed by the claimant, and a retained case annual fee of $50 per retained case which KCC is required to bill annually in the last quarter of each calendar year. The remainder of the deferred fee is to be paid by DLF when the claimant's case concludes by settlement or verdict.  The fee structure goes on to say that after payment of the case review and case retention portion of the $3,250 fee the majority of the fee shall be deferred to the conclusion of the case, payable upon the first distribution of monies from the claimant's recovery.

17.    Pursuant to the fee structure DLF will pay a "break-up fee" of $250 for a retained case that it instructs KCC to drop.  Later emails and discussions applied only the break-up fee to zero or negative value claims.

18.    Thus, the fee structure, as well as later discussions and communications between the parties contemplates a successful outcome of the claim in order for KCC to recover its full fee.

19.    KCC has failed to provide billing on an annual basis during the last quarter of each calendar year as required under the agreement.

20.    KCC has failed to provide case retention billing to bill to DLF within thirty (30) days of KCC obtaining a retainer signed by the claimant as required under the agreement.

21.    Recently, KCC has attempted to bill DLF for full fees for claims in which there is a zero or negative distribution to the claimants, contrary to The Agreement and its subsequent discussions and agreements with DLF.

22.    In September of 2017 James Dugan wrote to KCC to dispute the July and August invoices for transvaginal mesh claimants.  Dugan noted that the agreement called for mesh cases to be treated differently from other DLF cases and that invoice charges were in excess of the agreement, that some charges were for work not done, and that some charges for medical record retrieval were excessive.  Dugan also reminded KCC that an itemized listing of all KCC charges and medical record charges by provider had been requested for the mesh cases in June and that KCC had still not provided them.   Dugan again requested the itemization, and further requested that the same itemization for all cases be provided every thirty days going forward.

23.     In the fall of 2018 Dugan met with KCC to discuss the invoicing and pricing issues for the DLF mass tort inventory. Thereafter, fees were paid by DLF to KCC pursuant to these discussions.

24.     For example, ineligible clients (such as the vast majority of the In re: Testosterone clients-referred to as Low-T) on the inventory were paid only the $250 break-up fee. In Low-T, DLF had 108 claimants, 104 of which were disengaged because they did not meet the qualifying criteria for a valid claim. Thus, DLF paid KCC $30,726.77 which is a "breakup fee" of $26,000 ($250 per claim for the 104 not qualified claims), and $4,726.77 for the remaining four claims. This check was received and cashed by KCC in January 2019, yet two years later KCC sent DLF a Low-T bill seeking full payment for all Low-T claimants for a total of $286,370.67

25.     Additionally, DLF has made fee payments for disengaged and negative value cases, as well as some positive value cases from January 2019 through February of 2021 in the amount of $479,526.47. Despite the breakup fee agreements for such disengaged/negative value claims and KCC's practice of acceptance of those reduced amounts, KCC has presented a bill for full fees on all claims totaling to DLF for the full amounts totaling over $2.5 million. DLF has disputed the invoice.

26.     By accepting reduced fees for non-qualifying cases, KCC has implied through its conduct its intention to waive or relinquish any right it asserts to collect full fees on all cases.

27.     In addition to billing for amounts not contemplated by the agreement for disengaged/negative value cases and implying through its conduct its agreement to accept such payments as final, but later charging full value, KCC has breached the agreement in additional ways.

28.     KCC has been untimely in providing DLF with accumulated costs for settled DLF clients which are necessary for DLF to provide settlement funds to its clients. For example, on July 11, 2017, DLF requested via email that KCC provide an itemization of KCC costs, if any, for four AMS (mesh) clients named in the email. KCC responded the same day that they would send over the costs as soon as possible. A week later, on July 18, 2017, DLF emailed asking when DLF might receive the costs. KCC responded that it was following up. The next day, July 19, 2017, DLF replied that not having the costs is withholding disbursement to the clients and again asked when the cost would be sent. KCC responded that they are "currently awaiting final

approval on the invoice for these individuals." The inability of KCC to provide DLF with a

timely accounting delayed the clients' disbursement almost two weeks.

29.   Three weeks later, on August 10, 2017, KCC forward its invoice for the

remaining AMS clients.  This invoice contained full charges for some claims where no work

was done other than including the claimant in the database.  Some of the claimants files were

charged a Plaintiff Fact Sheet (PFS) fee when in fact KCC did not complete any PFSs for any

of the DLF AMS clients.  Some of the claimants files were billed for  medical record order fees

when in fact there were none.  DLF has also disputed this invoice.

## V.

## DECLARATORY JUDGMENT

30.   Plaintiff repeats and re-alleges each and every allegation of this Petition and

incorporates each allegation into this Count as if set forth in its entirety.

31.   This Court may, pursuant to La. C.C.P. article 1871 declare the rights, status, and

other legal relations whether or not further relief is or could be claimed.

32.   An actual controversy has arisen between Plaintiffs and Defendants as to the

rights, duties, responsibilities and obligations of the parties,  as to one or more of the following:

(a) whether a full fee is due for any claim that has a zero or negative value; (b) whether KCC is

in breach of the agreement by failing to provide timely billing pursuant to the terms of the

contract; (c) the amount payable to KCC for claims that have a zero or negative value; (d)

whether the original agreement constituted an enforceable contract and whether the subsequent

discussions and emails are enforceable amendments and/or modifications to the original

agreement; (e)  whether KCC has implied through its conduct its intention to waive or relinquish

any right it asserts to collect full fees on all cases.

33.   Resolution of the duties, responsibilities and obligations of the parties is necessary

as no adequate remedy at law exists and a declaration from the Court is needed to resolve the

dispute and controversy.

34.   Plaintiffs seek a Declaratory Judgement to establish the following:

  a.  The amount payable to KCC for claims that have a zero or negative value;

  b.  That KCC is in breach of the agreement by failing to provide timely billing

      pursuant to the terms of the contract;

    c. That the original agreement constituted an enforceable contract but that the terms are so vague and/or ambiguous that it fails to set a clear price agreeable to both parties and that the value of KCC's services must be determined by quantum meruit; or alternatively

    d. That the subsequent discussions and emails of the parties are enforceable amendments and/or modifications to the original agreement setting a clear price;

    e. That KCC, by its actions in accepting reduced fees for non-qualifying cases, has implied through its conduct its intention to waive or relinquish any right it asserts to collect full fees on all cases.

## VI.

## BREACH OF CONTRACT

35.    Plaintiff repeats and re-alleges each and every allegation of this Petition and incorporates each allegation into this Count as if set forth in its entirety.

36.    KCC has billed DLF for the balance of deferred fees despite there being no settlement or verdict for the claimant, contrary to The Agreement and its subsequent discussions and agreements with DLF.

37.    KCC has not provided intake and data management  in accordance with the terms of the agreement, in all cases for which it seeks full fee payment.

38.    KCC has not provided retainer procurement in accordance with the terms of the agreement, in all cases for which it seeks full fee payment.

39.    KCC has not provided client data collection services in accordance with the terms of the agreement, in all cases for which it seeks full fee payment.

40.    KCC has not provided document processing and review services in accordance with the terms of the agreement,  in all cases for which it seeks full fee payment.

41.    KCC has not prepared draft Plaintiff Fact Sheets nor has it collected the information needed for such Plaintiff Fact Sheets in accordance with the terms of the agreement, in all cases for which it seeks full fee payment.

42.    KCC has not provided lien resolution and related services in accordance with the terms of the agreement, in all cases for which it seeks full fee payment.

43.    KCC has at times sought payment for obtaining and reviewing medical records for some of DLF's clients when no such work was in fact done by KCC.

44.     KCC has at times been delinquent in responding to requests for costs, and/or delinquent in providing those costs, despite the urgency of the requests.

45.     KCC is entitled only to the fee owed for the work done pursuant to The Agreement, as modified by the parties, and as evidence by the payment of fees by DLF and the acceptance of those payments by KCC.

46.     In the event that finds the Agreement to be so vague and/or ambiguous in its terms so as to be void or unenforceable, then KCC is entitled only to the quantum meruit value of the services it performed.

## IX.

## JURY DEMAND

47.     Plaintiff, The Dugan Law Firm, APLC demand a trial by jury on all issues so triable.

## X.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, The Dugan Law Firm, APLC prays that this Petition be deemed good and sufficient and the Defendant Kurtzman Carson Consultants, LLC be served and cited to answer same, and that after due proceedings are had that there be a judgment herein declaring the rights and obligations of the parties, and finding Kurtzman Carson Consultants, LLC to be in breach of its agreement with The Dugan Law Firm, APLC and/or that the terms of the agreement are so vague and/or ambiguous as to be unenforceable and that Kurtzman Carson Consultants, LLC is only entitled to the quantum meruit value of the services that it has provided;

And for an awarding of any damages that may be due in favor of the Dugan Law Firm, APLC and against the Defendant Kurtzman Carson Consultants, LLC in an amount reasonable in premises, and with interest thereon from the date of demand until paid, and all costs of these proceedings,  including expert and attorney fees, and for any and all such further relief as the Court may find just and equitable in the premises.

May 14, 2021                    Respectfully submitted,

                               **DAVID S. SCALIA, Esq. (#21369)**
                               **JAMES R. DUGAN, II, Esq. (#24785)**
                               **DOUGLAS R. PLYMALE, Ph.D, Esq. (#28409)**
                               THE DUGAN LAW FIRM   365
                               Canal Street
                               One Canal Place, Suite 1000
                               New Orleans, Louisiana 70130
                               Telephone: (504) 648-0180
                               Facsimile: (504) 648-0181
                               jdugan@dugan-l awfirm.com
                               dscalia@dugan-lawfirm.com
                               drplymale@dugan-lawfirm.com

                       *Attorneys for Petitioner The Dugan Law Firm, APLC*

**PLEASE SERVE:**

*Through the Louisiana Longarm Statute*

KURTZMAN CARSON CONSULTANTS, LLC
222 N. Pacific Coast Highway, 3rd Floor
El Segundo, CA 90245

# THE DUGAN LAW FIRM
### A PROFESSIONAL LAW CORPORATION
One Canal Place, 365 Canal Street, Suite 1000
New Orleans, Louisiana 70130
Telephone: (504) 648-0180 | Facsimile: (504) 648-0181

**JAMES R. DUGAN, II, Esq.**
E-mail: *jdugan@dugan-lawfirm.com*

**DAVID SCALIA, Esq.**
E-mail: *dscalia@dugan-lawfirm.com*

May 19, 2021

**Certified Mail – Return Receipt Requested**
**9490 9116 9900 0248 4974 32**

KURTZMAN CARSON CONSULTANTS LLC
222 N. Pacific Coast Highway – 3rd Floor
El Segundo, CA 90245

  **RE: The Dugan Law Firm vs. KCC**
    **Civil District Court No: 2021-04133, Division "M' Section: 13**

Dear KCC:

  Enclosed please find a Citation and Petition in regard to the above captioned lawsuit. This service is being made in accordance with the Louisiana Long Arm Statue. Please be advised that you have thirty (30) days after service of this Citation and Petition to file your answer.

  Please contact me at the above address upon receipt of this letter if you have any questions.

    Very truly yours,

    David S. Scalia

DSS/mmp
Enclosures

**RECEIVED**

**MAY 2 4 2021**

**KURTZMAN CARSON CONSULTANTS**

**ATTORNEY'S NAME:**   Scalia, David S 21369
**AND ADDRESS:**        365 Canal Street Suite 1000, New Orleans, LA 70130

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

| NO: 2021-04133 | DIVISION: M | SECTION: 13 |

### THE DUGAN LAW FIRM

#### Versus

### KURTZMAN CARSON CONSULTANTS LLC

## CITATION

TO:      KURTZMAN CARSON CONSULTANTS LLC

222 N. PACIFIC COAST HIGHWAY, 3RD FLOOR, EL SEGUNDO, CA 90245

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

Petition for Declaratory Judgment

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the service hereof under penalty of default.

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

**\*\*\*\*\*\*\*\*COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE\*\*\*\*\*\*\*\***

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA May 18, 2021**

**Clerk's Office, Room 402, Civil Courts**         **CHELSEY RICHARD NAPOLEON, Clerk of**
**421 Loyola Avenue**                              **The Civil District Court**
**New Orleans, LA**                                **for the Parish of Orleans**
                                                   **State of LA**
                                                   **by** *Valerie West*
                                                   **Valerie West, Deputy Clerk**

---

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ _____ served a copy of the within | On this _____ day of _____ _____ served a copy of the within |
| **Petition for Declaratory Judgment** | **Petition for Declaratory Judgment** |
| ON **KURTZMAN CARSON CONSULTANTS LLC** | ON **KURTZMAN CARSON CONSULTANTS LLC** |
| THROUGH: | THROUGH: |
| Returned the same day | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said **KURTZMAN CARSON CONSULTANTS LLC** being absent from the domicile at time of said service. |
| _____ No. _____ | |
| Deputy Sheriff of _____ | |
| Mileage: $ _____ | Returned the same day |
| _____ / ENTERED /_____ | _____ No. _____ |
| PAPER          RETURN | Deputy Sheriff of _____ |
| _____/_____ /_____ | |
| SERIAL NO.    DEPUTY    PARISH | |

**ATTORNEY'S NAME:**   Scalia, David S 21369
**AND ADDRESS:**   365 Canal Street Suite 1000, New Orleans, LA 70130

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

| NO: 2021-04133 | DIVISION: M | SECTION: 13 |
|---|---|---|

### THE DUGAN LAW FIRM

#### Versus

### KURTZMAN CARSON CONSULTANTS LLC

#### CITATION

TO:   KURTZMAN CARSON CONSULTANTS LLC

222 N. PACIFIC COAST HIGHWAY, 3RD FLOOR, EL SEGUNDO, CA 90245

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

Petition for Declaratory Judgment

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the service hereof under penalty of default.

#### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.
********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA May 18, 2021**

**Clerk's Office, Room 402, Civil Courts**
**421 Loyola Avenue**
**New Orleans, LA**

**CHELSEY RICHARD NAPOLEON, Clerk of**
**The Civil District Court**
**for the Parish of Orleans**
**State of LA**
by _Valerie West_
**Valerie  West, Deputy Clerk**

---

#### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ _____ served a copy of the within | On this _____ day of _____ _____ served a copy of the within |
| Petition for Declaratory Judgment | Petition for Declaratory Judgment |
| ON **KURTZMAN CARSON CONSULTANTS LLC** | ON **KURTZMAN CARSON CONSULTANTS LLC** |
| THROUGH: | THROUGH: |
| Returned the same day | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and |
| _____ No. _____ | discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating |
| Deputy Sheriff of _____ | HIM/HER the said **KURTZMAN CARSON CONSULTANTS LLC** being absent from the domicile at time of said service. |
| Mileage: $ _____ | Returned the same day |
| _____ / ENTERED / _____ | _____ No. _____ |
| PAPER                    RETURN | Deputy Sheriff of _____ |
| _____ / _____ / _____ | |
| SERIAL NO.      DEPUTY      PARISH | |

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO: 2021-4133          DIVISION: " "          DOCKET: M-13

THE DUGAN LAW FIRM, A PROFESSIONAL LAW CORPORATION

VERSUS

KURTZMAN CARSON CONSULTANTS, LLC

FILED:_____          _____
                                         DEPUTY CLERK

PETITION FOR DECLARATORY JUDGMENT

NOW INTO COURT, comes THE DUGAN LAW FIRM, A PROFESSIONAL LAW

CORPORATION (hereafter "DLF"), by and through undersigned counsel, and for its Petition

respectfully states:

I.

INTRODUCTION

1.      DLF is a New Orleans based law firm operating primarily in the areas of

nationwide mass tort and class action litigation since 2001.

2.      Mass tort litigation is by its nature complex and requires managing the files of

hundreds if not thousands of individual claimants, each with their own case, and each requiring

their own proof of product identification and exposure, injury, and damages. Unlike class

actions, plaintiff attorneys in mass tort litigation represent hundreds or even thousands of clients

mostly obtained by attorney marketing, all of whom then need to have their individual facts and

circumstances of their cases reviewed. This inventory of cases then needs to be organized and

stored in an accessible manner.

3.      Mass tort litigation continues to grow. It can trace its history to the 1960s and

early 1970s, when attorneys began representing plane crash victims. In the seventies mass torts

expanded with toxic exposure cases such as the Viet Nam era Agent Orange exposure litigation,

and then Asbestos litigation. Later, in the nineties, mass torts expanded further with tobacco

litigation. In the 2000s mass tort litigation grew further with consumer products, as well

pharmaceutical and medical device litigation. As these numbers grew, so did the number of

claimants pursuing claims, creating larger and larger inventories of cases to be managed and

organized.  Because large number of claims and the complexity of mass tort litigation, law firms

engaged in the practice of mass tort litigation often engage the litigation support services of a

third party a mass tort administrator.

4.      Kurtzman Carson Consultants, LLC (hereafter "KCC"), founded in 2001,  has

been in business providing Corporate Restructuring Services, Claims Administration and

Noticing Services, High-volume Production and Distribution Services, Class Action Services,

and Virtual Data Room (VDR) Services.[1]

5.      As the number of mass tort cases continued to grow, in or about the early 2010s

KCC decided to expand its services to include Mast Tort administrative services. including but

not limited to client intake and retention, client communication, medical record retrieval and

review, plaintiff fact sheet (PFS) completion and filing, discovery assistance, settlement

negotiation, lien resolution, and funds disbursement.

6.      KCC holds itself out as having expertise as a mass tort administrator that provides

services to maximize the value of  mass tort firms' leads, navigating them from intake through

qualification, to medical records review, through discovery requirements, moving forward to

settlement, lien resolution, and finally, distribution.  KCC states that it brings expertise, value,

and high-quality service to each case, carefully managing each by its team of experienced

consultants with *decades of experience* and a *deep understanding of the distinctive needs

associated with complex mass tort administration*[2].

## II.

## PARTIES

7.      The Dugan Law Firm, APLC is a Louisiana Professional Law Corporation, a

citizen of the State of Louisiana, and domiciled in the Parish of Orleans with its principal place

of business located at 365 Canal Street, One Canal Place, Suite 1000, New Orleans, Louisiana,

70130.

8.      KCC, LLC is a  foreign limited liability company with principal offices in Los

Angeles, California, and additional offices in Louisville, Kentucky, New York, New York, and

---

[1] See LinkedIn page: https://www.linkedin.com/company/kcc-llc/about/ (Last visited May 10, 2021)
[2] https://www.kccllc.com/our-services/mass-tort/what-we-do (last referenced January 25, 2001). (emphasis added)

San Rafael, California.  Upon information and belief KCC, LLC provides its services to firms

throughout the United States including the State of Louisiana, and the Parish of Orleans.

## III,

### JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over all matters alleged herein.

10.    This Court has personal jurisdiction over Defendant pursuant to the Louisiana

Long-arm Statute.

11.    KCC entered into an agreement with DLF in the State of Louisiana, Parish of

Orleans.  KCC is providing services as a mass tort administrator to DLF whose business is

located in the State of Louisiana and has derived substantial revenue from such business in

Louisiana, and the basis of this suit arises out of such conduct.

12.    Venue is proper pursuant to Louisiana Code of Civil Procedure article 42(5)

because KCC is a foreign limited liability company and the Parish of Orleans is the Parish of the

plaintiff's domicile.

## IV.

### FACTS

13.    On June 19, 2015 DLF and KCC entered into a services agreement ("The

Agreement") whereby KCC agreed to provide mass tort administration services to DLF,

including intake and data management, retainer procurement, client data collection, document

processing and review, preparation of Plaintiff Fact Sheets, lien resolution and related services,

for prices and fees a set forth on a Fee Structure attachment to The Agreement.

14.    Between June 19, 2015 and the present, DLF and KCC have exchanged numerous

emails and letters,  and have engaged in numerous conversations regarding the fees due in

various of DLF's mass tort cases for which KCC is providing varying mass tort administration

services, including those which include many claimants whose claims have a zero or negative

value.

15.    As a result of these conversations and emails, DLF has paid KCC reduced

amounts for said zero and negative value cases, and KCC has accepted those payments.

However, KCC now seeks to collect fees not contemplated by The Agreement, the

conversations, or the emails, in effect seeking fees not agreed to by DLF and/or not earned by

KCC.

16.     Pursuant to the fee structure the maximum per claimant fee KCC charges is $3,250, of which $500 is considered a case retention fee which KCC is required to bill to DLF within thirty (30) days of KCC obtaining a retainer signed by the claimant, and a retained case annual fee of $50 per retained case which KCC is required to bill annually in the last quarter of each calendar year. The remainder of the deferred fee is to be paid by DLF when the claimant's case concludes by settlement or verdict.  The fee structure goes on to say that after payment of the case review and case retention portion of the $3,250 fee the majority of the fee shall be deferred to the conclusion of the case, payable upon the first distribution of monies from the claimant's recovery.

17.     Pursuant to the fee structure DLF will pay a "break-up fee" of $250 for a retained case that it instructs KCC to drop.  Later emails and discussions applied only the break-up fee to zero or negative value claims.

18.     Thus, the fee structure, as well as later discussions and communications between the parties contemplates a successful outcome of the claim in order for KCC to recover its full fee.

19.     KCC has failed to provide billing on an annual basis during the last quarter of each calendar year as required under the agreement.

20.     KCC has failed to provide case retention billing to bill to DLF within thirty (30) days of KCC obtaining a retainer signed by the claimant as required under the agreement.

21.     Recently, KCC has attempted to bill DLF for full fees for claims in which there is a zero or negative distribution to the claimants, contrary to The Agreement and its subsequent discussions and agreements with DLF.

22.     In September of 2017 James Dugan wrote to KCC to dispute the July and August invoices for transvaginal mesh claimants.  Dugan noted that the agreement called for mesh cases to be treated differently from other DLF cases and that invoice charges were in excess of the agreement, that some charges were for work not done, and that some charges for medical record retrieval were excessive.  Dugan also reminded KCC that an itemized listing of all KCC charges and medical record charges by provider had been requested for the mesh cases in June and that KCC had still not provided them.  Dugan again requested the itemization, and further requested that the same itemization for all cases be provided every thirty days going forward.

23.     In the fall of 2018 Dugan met with KCC to discuss the invoicing and pricing issues for the DLF mass tort inventory.  Thereafter, fees were paid by DLF to KCC pursuant to these discussions.

24.     For example, ineligible clients (such as the vast majority of the In re: Testosterone clients-referred to as Low-T) on the inventory were paid only the $250 break-up fee.  In Low-T, DLF had 108 claimants, 104 of which were disengaged because they did not meet the qualifying criteria for a valid claim.  Thus, DLF paid KCC $30,726.77 which is a "breakup fee" of $26,000 ($250 per claim for the 104 not qualified claims), and $4,726.77 for the remaining four claims.  This check was received and cashed by KCC in January 2019, yet two years later KCC sent DLF a Low-T bill seeking full payment for all Low-T claimants for a total of  $286,370.67

25.     Additionally, DLF has made fee payments for disengaged and negative value cases, as well as some positive value cases from January 2019 through February of 2021 in the amount of $479,526.47.  Despite the breakup fee agreements for such disengaged/negative value claims and KCC's practice of acceptance of those reduced amounts, KCC has presented a bill for full fees on all claims totaling to DLF for the full amounts totaling over $2.5 million. DLF has disputed the invoice.

26.     By accepting reduced fees for non-qualifying cases, KCC has implied through its conduct its intention to waive or relinquish any right it asserts to collect full fees on all cases.

27.     In addition to billing for amounts not contemplated by the agreement for disengaged/negative value cases and implying through its conduct its agreement to accept such payments as final, but later charging full value, KCC has breached the agreement in additional ways.

28.     KCC has been untimely in providing DLF with accumulated costs for settled DLF clients which are necessary for DLF to provide settlement funds to its clients.  For example, on July 11, 2017, DLF requested via email that KCC provide an itemization of KCC costs, if any, for four AMS (mesh) clients named in the email.  KCC responded the same day that they would send over the costs as soon as possible.  A week later, on July 18, 2017, DLF emailed asking when DLF might receive the costs.  KCC responded that it was following up.  The next day, July 19, 2017, DLF replied that not having the costs is withholding disbursement to the clients and again asked when the cost would be sent.  KCC responded that they are "currently awaiting final

approval on the invoice for these individuals." The inability of KCC to provide DLF with a timely accounting delayed the clients' disbursement almost two weeks.

29.     Three weeks later, on August 10, 2017, KCC forward its invoice for the remaining AMS clients.  This invoice contained full charges for some claims where no work was done other than including the claimant in the database.  Some of the claimants files were charged a Plaintiff Fact Sheet (PFS) fee when in fact KCC did not complete any PFSs for any of the DLF AMS clients.  Some of the claimants files were billed for  medical record order fees when in fact there were none.  DLF has also disputed this invoice.

## V.

## DECLARATORY JUDGMENT

30.     Plaintiff repeats and re-alleges each and every allegation of this Petition and incorporates each allegation into this Count as if set forth in its entirety.

31.     This Court may, pursuant to La. C.C.P. article 1871 declare the rights, status, and other legal relations whether or not further relief is or could be claimed.

32.     An actual controversy has arisen between Plaintiffs and Defendants as to the rights, duties, responsibilities and obligations of the parties,  as to one or more of the following: (a) whether a full fee is due for any claim that has a zero or negative value; (b) whether KCC is in breach of the agreement by failing to provide timely billing pursuant to the terms of the contract; (c) the amount payable to KCC for claims that have a zero or negative value; (d) whether the original agreement constituted an enforceable contract and whether the subsequent discussions and emails are enforceable amendments and/or modifications to the original agreement; (e)  whether KCC has implied through its conduct its intention to waive or relinquish any right it asserts to collect full fees on all cases.

33.     Resolution of the duties, responsibilities and obligations of the parties is necessary as no adequate remedy at law exists and a declaration from the Court is needed to resolve the dispute and controversy.

34.     Plaintiffs seek a Declaratory Judgement to establish the following:

a.   The amount payable to KCC for claims that have a zero or negative value;

b.   That KCC is in breach of the agreement by failing to provide timely billing pursuant to the terms of the contract;

c.  That the original agreement constituted an enforceable contract but that the terms are so vague and/or ambiguous that it fails to set a clear price agreeable to both parties and that the value of KCC's services must be determined by quantum meruit; or alternatively

d.  That the subsequent discussions and emails of the parties are enforceable amendments and/or modifications to the original agreement setting a clear price;

e.  That KCC, by its actions in accepting reduced fees for non-qualifying cases, has implied through its conduct its intention to waive or relinquish any right it asserts to collect full fees on all cases.

## VI.

### BREACH OF CONTRACT

35.     Plaintiff repeats and re-alleges each and every allegation of this Petition and incorporates each allegation into this Count as if set forth in its entirety.

36.     KCC has billed DLF for the balance of deferred fees despite there being no settlement or verdict for the claimant, contrary to The Agreement and its subsequent discussions and agreements with DLF.

37.     KCC has not provided intake and data management  in accordance with the terms of the agreement, in all cases for which it seeks full fee payment.

38.     KCC has not provided retainer procurement in accordance with the terms of the agreement, in all cases for which it seeks full fee payment.

39.     KCC has not provided client data collection services in accordance with the terms of the agreement, in all cases for which it seeks full fee payment.

40.     KCC has not provided document processing and review services in accordance with the terms of the agreement,  in all cases for which it seeks full fee payment.

41.     KCC has not prepared draft Plaintiff Fact Sheets nor has it collected the information needed for such Plaintiff Fact Sheets in accordance with the terms of the agreement, in all cases for which it seeks full fee payment.

42.     KCC has not provided lien resolution and related services in accordance with the terms of the agreement, in all cases for which it seeks full fee payment.

43.     KCC has at times sought payment for obtaining and reviewing medical records for some of DLF's clients when no such work was in fact done by KCC.

44.    KCC has at times been delinquent in responding to requests for costs, and/or delinquent in providing those costs, despite the urgency of the requests.

45.    KCC is entitled only to the fee owed for the work done pursuant to The Agreement, as modified by the parties, and as evidence by the payment of fees by DLF and the acceptance of those payments by KCC.

46.    In the event that finds the Agreement to be so vague and/or ambiguous in its terms so as to be void or unenforceable, then KCC is entitled only to the quantum meruit value of the services it performed.

## IX.

## JURY DEMAND

47.    Plaintiff, The Dugan Law Firm, APLC demand a trial by jury on all issues so triable.

## X.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, The Dugan Law Firm, APLC prays that this Petition be deemed good and sufficient and the Defendant Kurtzman Carson Consultants, LLC be served and cited to answer same, and that after due proceedings are had that there be a judgment herein declaring the rights and obligations of the parties, and finding Kurtzman Carson Consultants, LLC to be in breach of its agreement with The Dugan Law Firm, APLC and/or that the terms of the agreement are so vague and/or ambiguous as to be unenforceable and that Kurtzman Carson Consultants, LLC is only entitled to the quantum meruit value of the services that it has provided;

And for an awarding of any damages that may be due in favor of the Dugan Law Firm, APLC and against the Defendant Kurtzman Carson Consultants, LLC in an amount reasonable in premises, and with interest thereon from the date of demand until paid, and all costs of these proceedings, including expert and attorney fees, and for any and all such further relief as the Court may find just and equitable in the premises.

May 14, 2021                    Respectfully submitted,

                               _____
                               **DAVID S. SCALIA, Esq. (#21369)**
                               **JAMES R. DUGAN, II, Esq. (#24785)**
                               **DOUGLAS R. PLYMALE, Ph.D, Esq. (#28409)**
                               THE DUGAN LAW FIRM   365
                               Canal Street
                               One Canal Place, Suite 1000
                               New Orleans, Louisiana 70130
                               Telephone: (504) 648-0180
                               Facsimile: (504) 648-0181
                               jdugan@dugan-lawfirm.com
                               dscalia@dugan-lawfirm.com
                               drplymale@dugan-lawfirm.com

                    *Attorneys for Petitioner The Dugan Law Firm, APLC*

**PLEASE SERVE:**

***Through the Louisiana Longarm Statute***

KURTZMAN CARSON CONSULTANTS, LLC
222 N. Pacific Coast Highway, 3rd Floor
El Segundo, CA 90245

A TRUE COPY

_____
DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

CERTIFIED MAIL

stamps
.com

* 1-UP Laser Form *
*NUSA-C&F - 134 10/19*

RECEIVED

MAY 24 2021

KURTZMAN CARSON CONSULTANTS



CERTIFIED MAIL

$8.05⁰
US POSTAGE
FIRST-CLASS
FROM 70130
05/19/2021
stamps
endicia



9414 7116 9900 0248 4974 83

KURTZMAN CARSON CONSULTANTS LLC
222 N .PACIFIC COAST HWY FLOOR THIRD
EL SEGUNDO CA 90245-5648



**USPS TRACKING #**

9490 9116 9900 0248 4974 32

First-Class Mail
Postage & Fees Paid
USPS
Permit No.G-10

UNITED STATES
POSTAL SERVICE

PS Form 3811 Facsimile, July 2015 (SDC 3930)

JAMES DUGAN
365 CANAL ST.
STE 1000
NEW ORLEANS LA 70130
NOLA    70130

KKR