UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THE DUGAN LAW FIRM,** **A PROFESSIONAL LAW CORPORATION** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-1106** |
| **KURTZMAN CARSON CONSULTANTS, LLC** | **SECTION "B"(4)** |

### ORDER & REASONS

Before the Court are plaintiff and counter-claim defendant, The Dugan Law Firm's motion for reconsideration (Rec. Doc. 110), defendant and plaintiff-in-counterclaim, KCC Class Action Services, LLC's opposition (Rec. Doc. 114), and DLF's reply (Rec. Doc. 129). Having carefully considered the motions and legal memoranda, the record, and the applicable law, the Court finds that the motion to reconsider (Rec. Doc. 110) is **DENIED**.

### I. FACTS & PROCEDURAL HISTORY[1]

**A. The Parties and Background**

Defendant and plaintiff-in-counterclaim, KCC Class Action Services, LLC ("KCC"), is a provider of administrative services to law firms and other clients in connection with mass tort litigation and settlements. Rec. Doc. 50-1 at 2. Plaintiff and defendant-in-counterclaim, the Dugan Law Firm ("DLF"), is a New Orleans based personal injury law firm specializing in nationwide mass tort litigation. Rec. Docs. 61 and 62-1 at 2.

---

[1] The Court adopts verbatim the facts and procedural history from the Order and Reasons. Rec. Doc. 103.

1

**B. June 19, 2015 Services Agreement**

On June 19, 2015, KCC and DLF entered into a Services Agreement. Rec. Doc. 50-1 at 3; Rec. Docs. 61 and 62-1 at 5. KCC contends that pursuant to the Services Agreement, DLF agreed to pay (a) a fixed fee of $3,250 per claimant regardless of outcome; (b) a $250 break-up fee; (c) fees for additional a la carte services; (d) out-of-pocket expenses incurred while performing the services; and (e) a 1.5% late fee. Rec. Doc. 50-1 at 3-5. As DLF tells it, the pricing scheme invoiced did not match DLF's expectations when Mr. Dugan signed the Services Agreement. Rec. Docs. 61 and 62-1 at 5-6.

**C. The Ongoing Dispute and Settlement Efforts**

According to KCC, in August 2019, KCC advised DLF there were discrepancies in the amounts paid compared to the amounts due. Rec. Doc. 50-1 at 5. Attempts to negotiate a compromise on the outstanding amount were unsuccessful. *Id.* at 6. On December 20, 2020, KCC sent DLF an updated invoice reflecting the amount still owed in several matters, totaling over $2 million. *Id.* KCC further alleges that to date, DLF owes KCC approximately $2.5 million for cases that have not yet settled or been otherwise dismissed, and not yet been invoiced. *Id.*

According to DLF, KCC transmitted the first invoices in July and August 2017 and DLF disputed the pricing by letter. Rec. Doc. 61 and 62-1 at 5. KCC responded that "the new invoice is not

2

consistent with the terms of our contract" and continued to work on DLF's inventory. *Id.* at 6.

In October 2018, KCC sent DLF an invoice totaling approximately $3.5 million for its entire inventory of concluded cases and another $2.3 million in estimated costs for additional ongoing active cases. *Id.* This prompted DLF representatives to meet with KCC in California in December 2018. *Id.* at 6-7. DLF avers that DLF explained to KCC they would only pay for work performed and how certain low-value cases exceeded a claimant's recovery. *Id.* at 7. Following the first meeting, believing the parties were "on the same page," DLF began paying invoices. *Id.* at 7. DLF paid seven invoices in 2019.[2] *Id.* at 7.

In September 2019, DLF claims KCC revised its pricing methodology and invoiced DLF. *Id.* On October 15, 2019, DLF and KCC met again to discuss new invoices. *Id.* at 8. During the meeting, DLF complained the new invoices were incorrect, and left believing the parties were on common ground. *Id.* However, on December 2020, after KCC transmitted nine new invoices for concluded cases that were higher, DLF terminated the relationship and filed for declaratory relief. *Id.*

## II.   LEGAL STANDARDS

### A. Rule 54(b) & Rule 59(e)

---

[2] Invoices were paid in January, May, twice in June, July, and twice in November. Rec. Docs. 61 and 62-1 at 7.

Under Federal Rule of Civil Procedure Rule 54(b), a movant may seek reconsideration of interlocutory orders, and further authorizes the district court to revise, at any time, any order or other decision that does not end the action. *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (internal citations omitted); *see also* Fed. R. Civ. P. 54(b). "Rule 54(b) is less stringent than Rule 59(e) and does not 'demand more' . . . to warrant reconsideration." *Id.* at 336-37. "The general practice of courts in the Eastern District of Louisiana has been to evaluate Rule 54(b) motions to reconsider under the same standards that govern Rule 59(e) motions to alter or amend a final judgment, balancing the interests of justice with the need for finality." *Autin v. Goings*, No. CV 20-1214, 2021 WL 4476776, at *2 (E.D. La. Sept. 30, 2021) (internal citations omitted), *amended*, No. CV 20-1214, 2021 WL 5356875 (E.D. La. Nov. 17, 2021).

Federal Rule of Civil Procedure Rule 59(e) provides: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "A Rule 59(e) motion 'calls into question the correctness of a judgment.'" *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479 (internal citation omitted). Additionally, "[t]he

4

district court has considerable discretion in deciding whether to reopen a case under Rule 59(e)." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993).

The Fifth Circuit "has held that such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 478-79 (internal citation omitted); *see also Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). To prevail on a Rule 59(e) motion, a movant must demonstrate at least one of four factors: "(1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in controlling law." *S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 921 F. Supp. 2d 548, 565 (E.D. La. 2013); *Schiller*, 342 F.3d at 567.

### III. ANALYSIS

#### A. Unilateral Error & Inexcusable Error Doctrine

DLF's motion for reconsideration (Rec. Doc. 110 at 3) begins with an assertion that the Court misstated and/or misapplied the standard for unilateral error under Louisiana law when it stated: "In light of these undisputed facts, DLF has not proffered sufficient evidentiary support that KCC knew or should have known

5

of any alleged error, so that it would sustain DLF's meeting of the mind contention." Rec. Doc. 103 at 12. We explain why the Court's conclusion is sound and supported by law.

Under Louisiana law, "[c]onsent may be vitiated by error, fraud, or duress." La. Civ. Code art. 1948. "Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." La. Civ. Code art. 1949. Regardless of whether the error is bilateral or unilateral, "the error for which relief may be granted (1) must affect the cause of the obligation, and (2) the other party must know or should have known 'the matter affected by error was the cause of the obligation for the party in error, that is, that it was the reasons he consented to bind himself.'"[3] *Peironnet v. Matador Res. Co.*, 2012-2292 (La. 6/28/13), 144 So. 3d 791, 807. The comments under art. 1949 further elucidate:

> When only one party is in error, that is, when the error is unilateral, there is theoretically no meeting of the minds, but granting relief to the party in error will unjustly injure the interest of the other party if he is innocent of the error. Louisiana courts have often refused relief for unilateral error for this reason. Yet . . . they have granted relief for unilateral error in cases where the other party knew or should have known that the matter affected by the error was the reason or principal cause why the party in error made the contract . . . **Under this revised Article, it is not**

---

[3] Put another way, unilateral error may vitiate consent where "one party can be mistaken and that mistake will vitiate consent if the other party knows or should have known." *Peironnet*, 144 So. 3d at 807.

> **necessary that the other party have known of the mistake; it suffices that he knew or should have known that the matter affected by the error was the reason that prompted the party in error to enter the contract.**

La. Civ. Code Ann. art. 1949, cmt. (d) (internal citations omitted) (emphasis added); *see also Peironnet*, 144 So. 3d at 807-08. Again, in view of the undisputed evidence and the interest of justice, this Court cannot conclude KCC knew or should have known the matter affected by the alleged error of price was the reason that prompted DLF to enter the contract. What's more, DLF's principal cause to enter the contract was not price, as DLF avers, but rather services from KCC. Rec. Doc. 110-1 at 3-4.

Further, assuming there was an error, the Court's conclusion would remain undisturbed. "The court **may** refuse rescission when the effective protection of the other party's interest requires that the contract be upheld." La. Civ. Code Ann. art. 1952 (emphasis added). When considering whether to rescind contracts for unilateral error, Louisiana courts evaluate whether the party in error was excusable; "that the party in error did not fail to take elementary precautions that would have avoided his falling into error . . . [o]therwise the error is regarded as inexcusable, in which case, the party does not obtain relief." *Peironnet*, 144 So. 3d at 810 (quoting Saul Litvinoff, *Vices of Consent, Error, Fraud, Duress and an Epilogue on Lesion*, 50 La. L. Rev. 1, 36 (1989)). "Whether an error is excusable or inexcusable should be

7

determined . . . according to the circumstances surrounding a particular case" and "personal circumstances of the party in error, such as age, experience and profession, are to be taken into account. An error made by a professional person concerning a matter within his field of expertise would no doubt be regarded as inexcusable." *Id.* (citing *Scott v. Bank of Coushatta,* 512 So.2d 356, 362–63 (La.1987) ("Louisiana jurisprudence is sprinkled with cases which deny relief to parties who claim an agreement should be invalidated because of unilateral error which is caused, in large part, by the complaining party's inexcusable ignorance, neglect, or want of care.").[4]

Mr. James Dugan is, by his own admission, a sophisticated mass tort attorney. Rec. Doc. 62-2 at 1. Further, it is undisputed that the parties signed the Services Agreement on June 15, 2015. Rec. Doc. 50-1 at 3; Rec. Doc. 61 and 62-1 at 5. Mr. Dugan was authorized to sign the Services Agreement on behalf of DLF in his role as President of DLF. Rec. Doc. 50-6 at 8. When reviewing the

---

[4] "A review of this jurisprudence indicates two prominent factors in the evolution of the contractual negligence defense (a) Solemn agreements between contracting parties should not be upset when the error at issue is unilateral, easily detectable, and could have been rectified by a minimal amount of care. (b) Louisiana courts appear reluctant to vitiate agreements when the complaining party is, either through education or experience, in a position which renders his claim of error particularly difficult to rationalize, accept, or condone." *Peironnet v. Matador Res. Co.*, 2012-2292 (La. 6/28/13), 144 So. 3d 791, 810-12 (citing *Scott v. Bank of Coushatta,* 512 So.2d 356, 362–63 (La.1987)

Services Agreement, Mr. Dugan also initialed the bottom of each page. *Id.* at 7. Finally, Mr. Dugan made handwritten modifications and included additional handwritten terms on the Fee Structure segment of the Services Agreement, before including either his initials or signing next to said modifications. *Id.* at 8; *see also* Rec. Doc. 50-3 at 7-8. If Mr. Dugan intended to bind DLF under a different set of contractual terms not set forth in the Services Agreement, he had the experience and opportunity to either refuse to sign or make further modifications or clarifying any terms to the Services Agreement. Rec. Doc. 114 at 8. Alas, he did not.[5] *New Orleans City v. Ambac Assur. Corp.*, 815 F.3d 196, 202 (5th Cir. 2016) ("Louisiana courts appear reluctant to vitiate agreements when the complaining party is, either through education or experience, in a position which renders his claim of error particularly difficult to rationalize, accept, or condone."); *see also Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 98-0193 (La. App. 4 Cir. 9/30/98), 720 So. 2d 372, 373 ("The fact that a whole day of negotiations was capped off by the signing of a document which memorialized the agreement between the parties

---

[5] The signed Services Agreement also contained a "Entire Agreement" clause, which follows: "This Agreement constitutes the entire agreement and understanding of the parties in respect of the subject matter hereof and supercedes all prior understandings, agreements, or representations by or among the parties, written or oral, to the extent they relate in any way to the subject matter hereof." Rec. Doc. 50-3 at 8.

9

signifies that there had been a meeting of the minds. Otherwise, the document would not have been signed, particularly considering who signed.").

The record is clear: There is no genuine issue of material fact relative to contract formation, and, even if there was a vice of consent, the proffered error is unreasonable and the resulting conclusion is the same.

**B. Error, evaluated on summary judgment**

Next, DLF avers "the Court improperly assessed the credibility of the parties and weighed evidence in finding the existence of an enforceable contract, one unaffected by error." Rec. Doc. 110-1 at 5. As they see it, those determinations are reserved for the jury. *Id.*

We are unpersuaded by this contention as Louisiana courts often, and correctly, grant motions for summary judgment on whether unilateral error exist, and contracts are enforceable. *See Leger v. Bank of New York Mellon as Tr. of GSAMP Tr. 2004-SEA-2*, 2020-385 (La. App. 3 Cir. 9/1/21), *writ denied*, 2021-01448 (La. 11/23/21), 328 So. 3d 85 (affirming grant of summary judgment because "[t]he re-financing documents clearly set forth the repayment terms, and these documents were signed" by the parties); *Wagner v. DA Exterminating Co. of St. Tammany, Inc.*, 2020-0876 (La. App. 1 Cir. 4/16/21), 324 So. 3d 105, 111 (affirming grant of summary judgment as error did not vitiate the contract upon signing

10

of the contract); *Mobil Expl. & Producing U.S. Inc. v. Certain Underwriters Subscribing to Cover Note 95-3317(A)*, 2001-2219 La. App. 1 Cir. 11/20/02), 15, 837 So. 2d 11, 25–26 (affirming grant of summary judgment because "all the facts upon which the trial court based its summary judgment were not subject to a genuine dispute" and "the trial court reasonably rejected" the alleged error in the written contract.); *All. Gen. Ins. Co. v. Louisiana Sheriff's Auto. Risk Program*, 52 F. Supp. 2d 711, 719 (E.D. La. 1999) (granting summary judgment where parties "possessed experience" and permitting rescission due to "ignorance would unfairly injure the interests" of the other party.).

Since the controlling law here is so clear, the Court cautions DLF against further expending judicial resources on such settled doctrine.

### C. Additional Evidence

Finally, DLF contends "the Court went too far when it not only denied DLF's Cross-Motion for Partial Summary Judgment on this issue but granted a motion that was not before it and found an enforceable contract unaffected by DLF's error to exist." Rec. Doc. 110-1 at 4. That argument is unavailing. First, KCC's motion for partial summary judgment (Rec. Doc. 50) requested a finding from this Court that the Services Agreement is enforceable and "clear and unambiguous." *See generally* Rec. Doc. 50-1. Second, KCC's motion anticipated that DLF might raise a "meeting of the

11

minds" contention, which put the Court and DLF on notice. Rec. Doc. 50-1 at 11, n.33 (noting "KCC anticipates DLF will assert there was no 'meeting of the minds' with respect to the Services Agreement" before briefing the relevant legal authority). Third, DLF responded to KCC's argument in its cross-motion **and** opposition to KCC's motion for partial summary judgment. Rec. Docs. 62-1 at 10-17; 61 at 10-17. Relatedly, DLF's motion even admitted the Court may find "there is a contract" when it provided an alternative argument for us to consider. Rec. Doc. 61 at 18.

Based on the requested relief, the Court was required to first address formation and validity before turning to interpretation. Rec. Doc. 103. In view of the above, DLF "was aware that the defense was at play and had a full opportunity to argue against it and present whatever relevant evidence he had." *Atkins v. Salazar*, 677 F.3d 667, 681 (5th Cir. 2011).

In their reply in support of reconsideration, DLF makes a final request that because there will likely be a significant amount of additional discovery on the issue of error, such evidence (if any), should not be precluded from further discovery and trial. Rec. Doc. 129 at 6.

**If evidence not otherwise reasonably ascertainable beforehand should arise regarding a true error, it may arguably be admissible if consistent with the Federal Rules of Evidence, subject to**

**appropriate objection or motion in limine. At present, no such evidence is found in the instant record.**

New Orleans, Louisiana this 7th day of March, 2023

_____
SENIOR UNITED STATES DISTRICT JUDGE